Good morning, Your Honor. Phil DePere for the appellant. I think the first issue that needs to be addressed is the fact that the appellant never had any opportunity to file an amended complaint, which he had a right to do. The ruling, the dismissal order... Well, even if he had a right to, the question is, were you prejudiced by having that right denied? And to show that you were prejudiced, I think you have to show that it would not have been futile as Judge Walter thought it would have been. Well, I didn't think that the order suggested that it was futile. The order came up. There was no motion to dismiss filed by any party in the district court. There was no motion to dismiss. Well, there was a motion to dismiss on a different ground, right? Well, there was a slap motion, which would not have been proper in the district court. Well, but you said there was no motion to dismiss. Well... There was a motion to dismiss. Well, there was a motion, there was a slap motion to which we had filed substantive opposition and detailed opposition. All right. And that's in the record. So we show, we demonstrated in our opposition to the slap motion that, number one, the slap motion wouldn't apply in district court in any event because we only sued on a federal question. The cases are clear in the Ninth Circuit that slap has no application in that case. It was not a state law claim. So there would not have been a slap motion, but we went ahead and put in detailed substantive opposition to the slap motion in the form of declarations and extensive memorandum of constitutional authority. Now, that, the issue, we never got to a pleading issue in the case because the court on its own treated the matter as a motion to dismiss for failure to state a claim and didn't cite to any portion of the record of the pleadings at all the complaint that was extant. It simply pointed out that we had filed our RICO case statement and made some additions and corrections to it. Now, the corrections and additions were first typographical and contextual, but the amendment that we added to the RICO case statement was the fact that the district court in the federal forfeiture proceedings had issued an extensive ruling, findings of fact and conclusions of law, that Mr. Naval had used the trust for illegal purposes and to obstruct justice and for fraud. And that was in the, and we brought that to the attention of the district court, which we think heavily on our claim that this was a RICO enterprise. Could you ask for the opportunity to amend? We never had the opportunity. No. One question at a time. Sure. No. And that's, I think, the core here. There was, we were blindsided by the fact that on calendar, and just so we're clear on the procedure here, because I think this is quite different than the Wah case, Wah v. Metris Direct, that's at 348 Bedford, 1102, which questioned the heightened pleading, the heightened, the showing that needs to be made on these RICO case statements that various districts use. And, in fact, this district, that case suggested that the Second Circuit opinion that's cited is the more appropriate and cautious approach. But the fact remains, we filed and served the complaints. The defendants defaulted. They made a motion for release and default, which was granted. The next pleading is not a pleading from the Duvalls, but rather the motion, the slap motion under CCP 425.16 from Ms. Moretz. That motion is set for hearing. We filed substantive opposition. It addressed all the issues. So I take it your argument is that you had no idea what was going to happen. Absolutely. And you couldn't have anticipated that the district court would not only dismiss, but would dismiss without, with prejudice, correct? Correct. Do I have a follow-up question? I'm sorry. Once you received that result, did you move for reconsideration? Yes, we did. And in the motion for reconsideration, did you request leave to amend? Yes. And we addressed what our issue, what issues and what districts. Did you attach a proposed amended complaint? No, we did not attach a proposed amended complaint. The motion for reconsideration was denied, and that's in the record, and that's part of our record here. So procedurally, the way this came up was, which is unique and quite different from law, is that we were faced with a slap motion, which we briefed in detail. The hearing never went forward. The court took it under submission and then issued the order. And it's quite clear we had no notice whatsoever that there was a motion to dismiss. The court on its own issued an order dismissing the case and, in fact, didn't even refer to, didn't even cite to any authority for what it was doing. And that's clear in the order. It doesn't refer to. One of the bases for the dismissal was that on the count that, or counts that related to the attempted takeover of Blue Water and the trust. Right. Are you following me? Right. Sure. That it was unsuccessful. The attempted takeover, that's what the allegation was. There was an attempted takeover. Your client rebuffed it. It was unsuccessful. Am I correct so far? That is correct. Okay. How could amendment cure that problem? Let me address that. The amendment, the claim was, the enterprise was the use of the trust, the control of the trust by Victor Naval. The district court, and I have the, let me just get the exact language from the order. The order pointed out that in our RICO case statement, we said that he was attempting to take over the trust. Attempting. And the court focused on an attempt rather than he had control of the trust. Now, at this juncture, there was a lot going on in other courts. We, in fact, in October, well, I'll come back to that in a minute. Victor Naval was not the trustor of the trust. His sister, Tommy Naval, was the trustor of the trust. Technically, on paper, he was an interloper. Not a beneficiary of the trust. His children were. His sister was the sole trustee of the trust. What does all what you're saying have to do with Judge Hawkins' question? I think what I'm answering is that we lay out facts, which I didn't. No, no, no. Look, look. This is what Judge Walters, one basis for dismissal is because it was only an unsuccessful attempt to take over, right? Now, Judge Hawkins' question is, how can you cure that by an amendment? It wasn't an unsuccessful attempt because we were being sued. It was successful? I thought you rebuffed the attempt to take over. Well, it hadn't been. As of the time of the filing of the complaint, we were resisting the attempt to take it over. But the litigation was ongoing. Litigation was ongoing. I know. So as of that time, it was not successful, right, the attempt to take over? Well, he was pursuing. Is that true or not? Was it successful at that point? Had he taken over the trust? The trust? Yeah. Well, let's maybe distinguish. Can you answer yes or no to that? Yes, he had taken over the trust. He had taken over? The trust, yes. He was behind the trust. And, in fact, he was controlling the trust. Wait a minute, wait a minute. Wasn't your client the trustee? My client was the trustee. And in spite of your client being the trustee, he had taken over the trust? Yes, because he was using, our claim is that he was using the trust as a vehicle to conceal assets and to avoid his federal forfeiture. Well, that doesn't mean he's taken over the trust. Well, the long and short of it is what could have been explained in an amended plea. Well, you haven't done much of a job explaining it so far. Well, if I can answer the question. So my question is, why don't you give a simple answer? How can you cure the admission that it was only an unsuccessful attempt? We didn't admit that it was unsuccessful. We admit that it was. Well, by definition, an attempt is unsuccessful. So you said it was only, it was an attempt. Now, so how do you cure that? What can you allege to cure that in an amended complaint? Well, the trust, we can allege that he had submitted to the probate court, and he had submitted to the probate court a document through Ms. Merez. So what? The probate court didn't believe it. Well, what the probate court did was denied their petition to remove Ms. Hendricks as trustee. That's what I said. The probate court didn't believe it. So you're really not answering the question. How can you cure your pleading that it was only an attempt? How do you cure that by an amendment? To allege the litigation that's going on in which, here would be the allegation, that Victor Naval, Tanya Naval, and Louisa Merez were claiming that Ms. Hendricks was holding Blue Water Sunset in trust for the benefit of the children. You're not telling us how you're going to cure the. . . I'm telling you exactly what we're going to allege. What we're going to allege is that Victor Naval, that Tanya, that the. . . that Jana Hendricks was holding Blue Water Sunset in trust for the benefit of the children of Victor and Tanya Naval, and that the trust was more than simply Blue Water Sunset, that it was an agreement that she was holding it for the benefit of the children of the Navals. That was or is in litigation in a state court? That was in litigation at the time. And the claim. . . And what happened? Well, that. . . well, on October 17th of this year, October 17th this year, the probate court found that the Brothers Irrevocable Trust was a sham trust and terminated it. That was found October 17th. We are still in litigation because the Navals are still suing Ms. Hendricks, claiming that there is an implied agreement and an oral agreement, separate and apart from the written agreements, that she is holding Blue Water Sunset for the benefit of the Naval children. So they're still unsuccessful? Well, the litigation is still going on. The long and short of it is he has been in the. . . Then don't you have to wait until all that litigation is completed in order to determine who wins before you can allege that they've, you know. . . And that's very clear in the complaint. It doesn't matter how many corners it has. I mean, it's unsuccessful. Everything they've tried to do against your client has not succeeded. But the point is. . . Because you're. . . because you're such a good lawyer, right? Well, apparently not in Your Honor's eyes here. Well, I can't tell you. But if you answer the question for me, maybe I can tell. I'm trying to answer the questions, Your Honor. The difficulty is that the enterprise is shifting in this case. That's the problem. The enterprise is shifting. First, we're told. . . First, we're told that he's. . . that he wants control of Blue Water. . . of the Brothers of Red River Trust. Now, he stood behind his sister as sort of the power behind the throne, claiming that she was the trustee. I think you've covered this. And I think we do understand the argument. Do you want to save a little time for rebuttal? Yes. I see I have 2.3 minutes. I'll be very short. We say that. . . You're erasing your opportunity to correct their misstatements, if any, on argument. Do you still want to talk? Yes. I will stand back and reply. Okay. You have about a minute and 49 seconds. That's what I say. Thank you very much. Thanks for coming in today. Good morning, Your Honors. I'm Richard Farkas, appearing for Appellee Louisa Moritz. Is Mr. Freeze with you? Mr. Freeze is representing the Novell Appellees. Are you guys going to divide this at all? Well, our arguments are going to have some overlap that we're going to be addressing. We're going to hear from both of you? Yes, sir. Okay. How much time are you going to take? If we've got 15 minutes, I would guess we'll probably divide it 50-50. Why don't you put 8 minutes on the clock? And I'll try to leave time for rebuttal. Since he stepped up first, we'll give him an extra minute. Very briefly, Your Honor, before I. . . If you feel you need it. Thank you, Your Honor. Very briefly, before I address the substance of the RICO claims and why the dismissal of the case was appropriate, I just want to point out that substantially all of the factual assertions that were made in the appellant's brief simply lacked any recitation to the record. And they were just facts that were stated in the brief without any citation to the record. The two reply briefs were stricken. Here's the thing that, you know, since you don't have too much time, concerns me about your position. You have to admit that the procedure Judge Walter engaged in was very unusual, wasn't it? It doesn't comport with the adversarial system. With respect to this appeal or the district court? With respect to what, you know, what he did. He dismissed the case without, you know, giving the plaintiff an opportunity to be heard. Isn't that what he did? I would take issue with that. And there's two specific misstatements that I believe were made in the appellant's brief. And, again, during the whole argument, appellant stated that there never had been by any party a motion to dismiss under Rule 12b-6. And that's not entirely accurate. Well, I know. I corrected him on that. There was a slap motion, which, you know, slap doesn't apply to federal claims. We all know that. It was a slap motion and an alternative motion to dismiss under Rule 12b-6. And that appears in our excerpts at pages 5, 6, and 11, where we specifically state that dismissal is appropriate both as an anti-slap motion and in the alternative as a 12b-6 motion. And I think for that reason the district court picked up on it, compared the five opportunities of the plaintiff to properly state a RICO claim and determine on at least two prongs that there was no RICO claim. Were they given an opportunity to respond to the 12b motion? We didn't have to respond to the motion. No, no. You're saying that you had in front of Judge Walter, in front of the district court, a motion to dismiss under Rule 12b-6? That's correct. Okay. Was the opponent given an opportunity to respond to that? The appellant certainly had an opportunity to respond and did, in fact, file lengthy opposition. And that opposition was substantially reiterated in the motion for reconsideration that was made after the dismissal. So it's our contention that not only was the appellant not deprived of an opportunity to amend, but she had the opportunity to state a RICO claim in her complaint, in a RICO case statement, in a corrected RICO case statement, in a supplemental RICO. Well, she, in fact, was not given an opportunity to amend, right? She did, in fact. I mean, the normal, you know, the normal everyday peanut butter and jelly procedure in district court is if you dismiss under Rule 12, you give the pleading party an opportunity to amend. Now, sometimes they'll say, I want to stand on my complaint and take it up to the court of appeals. But you at least give them that opportunity. Well, that's correct, Your Honor. But I think Judge Walter correctly said, well, there's been four or five bites at that apple. And the judge specifically addressed it in its order, because it said normally I would give opportunity to amend, but amendment here would be futile. And the reason it would be futile is because there were specific admissions made on repeated occasions in the appellant's papers that admitted she could not plead a RICO case. She basically admitted that she had no standing. She admitted that at best the no-vows, and I'm not even talking about Ms. Moritz, but at best the no-vows had attempted to take control of the trust. And even despite that, she further stated in her RICO statements, as well as even in her brief, that use of investment of racketeering proceeds could not have been presented. She stated that as late as in her brief, as well as the RICO statement. And that's one other misstatement I'd like to address in the brief, because the brief argued that although the admission that there was no knowledge of use of investment of racketeering proceeds was in the case statement, appellant argued in her brief that that dangerous admission had been omitted in the corrected RICO case statement. And that's not true. It wasn't omitted. It was simply moved from paragraph 8a to 8b verbatim the same admission was made. This is an aside, which I just don't know, I'm sure. Are these people all related in some way? Is this a big family squabble? No, Your Honor. I mean, there was a romantic relationship, I understand, at one point between Victor Novell and the appellant, and Victor Novell and the competing trustees, and we were Tonya Novell, our brother and sister. My client, Louisa Moritz, is not related in any way, shape, or form, except to the extent that in about 2006, years after this trust business occurred, she represented the Novells for a short period of time. She's a lawyer. She is an attorney. Okay. And co-counsel in this appeal. So finally, Your Honor, I'm addressing again on this assertion that there was an abuse of process, or an abuse of discretion, rather, in denying leave to amend. I think the district court ---- Did Judge Walter ever clear out the slap motion? The slap motion was deemed to have been moot precisely because the entire case was dismissed with prejudice. Let me make clear my question. Did Judge Walter ever say, in so many words, I have a slap motion, anti-slap, is that what you folks call it over here? In the state court actions, typically, yes. And I have a Rule 12b motion. Slap has no application in federal court. I'm pushing that aside. We're focusing in on the Rule 12 motion. Here we go. Did he ever do anything like that? I think the only specific reference to the slap motion was his determination that, as an anti-slap motion, it was deemed moot because of the 12b-6 aspects, that is, the failure to state a claim under 1962a, b, and d, completely defeated the racketeering allegations. Finally, Your Honor, as I see, I've only got about a minute and a half, but I did mention in our brief, I believe this was a frivolous appeal. We had situations where I think there was nothing new presented in the appellate brief or in even the attempted reply briefs, which were stricken. There were a number of misstatements specifically about the lack of opportunity to amend and the fact that there never was a 12b-6 motion presented and everything else. Your Honor's, in a recent order, specifically reserved the sanctions and attorney's fees aspects under Rule 38 pending the outcome of this appeal. And I just want to reiterate those. I've got about 48 seconds. No need to use it if you don't want to. That's fine, Your Honor. Thank you. Thank you for your time. Mr. Priest? Good morning, Your Honors. I represent the appellees, Tanya Noval and Victor Noval. The issue regarding the lack of a motion to dismiss, I think if we look carefully at Judge Walter's ruling, he's not dismissing for failure to state a claim. I think he's dismissing for lack of standing, which is a jurisdictional issue. It's different from failing to state a claim. Lack of standing is something that courts always have to look at on their own motion, whether they have jurisdiction to hear a certain claim, especially in Federal court. And in the Ninth Circuit, Federal courts are required at all times to consider whether they have subject to that jurisdiction. But the usual procedure, as my recollection from being district judge, is when a district judge believes there could be a jurisdictional issue, the judge issues an OSC as to why the case shouldn't be dismissed for lack of standing so, you know, the parties know that what's about to happen, they have a chance to be heard. He didn't do that, did he? He didn't. But the legal case statements filed here were absolutely clear. I know that, but, you know, there's no reason for the plaintiff to be concerned about whether or not there was jurisdiction, because no one ever raised the issue with the, you know, brought it to the plaintiff's attention. Isn't that true? That's true. That's true. But, again, the appellant had a full opportunity to move to reconsider, and the sole basis was, what additional facts can I allege to correct this? And she attaches the findings from the forfeiture action, which actually support the position that she lacks standing, because that court found that the trust was never capitalized, never had any assets. That defeats her claim under 1962a. There's no money or income, racketeering, or otherwise. There's nothing there. Wasn't that really a combined? Standing really goes with the substance. You didn't get injured. You have no standing. You have no RICO claim. I don't look at it particularly as just a standing issue. I think it's a substance issue that there's nothing that you've got in this complaint that gives you the position of recovering under the statute. That's true. It covers both standing and failure to state a claim. But her motion for reconsideration and her briefs to this court and the record that she submitted establishes that there is no way she can correct these flaws in her case. She can't change the fact that the trust had no money, had no assets. She can't change the fact that my client was never successful in removing her as a trustee. She has appeared, successfully appeared in court as the trustee for the trust. The courts have recognized her as the trustee, that she has the powers, and that my client has never once exercised any powers as a trustee in a court or in any transaction. Well, there was an attempt in the New Jersey transaction, and it was defeated by the court. So now the trust has been dissolved. So there is nothing here or in the briefs or in the motion for reconsideration suggesting that she can amend. I think we understand your argument. Thank you. Thanks for coming in today. Rebuttal? Why don't you start by telling us in simple, straightforward terms what your client's standing is on the 1962 claim? Okay. Her standing is that she is a victim of the extortion attempts against her because she refused to turn over to the Duval's Blue Water Sunset. Okay. That's it. When you received Judge Walter's decision and then moved to reconsider, was part of that motion addressed to standing? Yes. I addressed it. What's the docket entry on that? Do you know? Yes, I do. I haven't seen it. I haven't seen it. So when we read this docket entry, it's going to show that you describe what her standing would be if you were allowed to amend. Yes. I want to get the court the docket number. I'm going to look it up. Yes. Docket 67. Okay. That's where it is. Anything else? Yes. Very briefly. I have 45 seconds. Judge Walter did not consider the papers that were filed by Ms. Moritz as a motion to dismiss. And that's clear from his order of May 31, because at the very last paragraph I would direct the court's attention, the court said on May 17, 2007, the court took under submission Defendant Louisa Moritz's motion to dismiss as a slap lawsuit and for attorney's fees. That's all the order says. There's no notice to me that the court was considering any kind of a motion to dismiss on any other grounds. We thought that it was a pure slap motion. In light of the foregoing, Defendant's motion to dismiss is denied as moot. No ruling on any motion to dismiss at all. Okay. And so, therefore, we think there's been a complete denial of procedural due process in the context of this case. 12 seconds. I thank you very much. You're a little over, but thank you very much. Let's thank both sides. All sides for their argument. The case just argued will be submitted for decision. And we're going to take a 5-minute break. If counsel on Century Insurance v. American National will come forward and get yourselves ready, we'll be back out in about 5 minutes.
judges: Hawkins, Tashima, Bright